IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No.08- 01 |
| | : | |
| ANTHONY J. LOFINK, | : | |
| | : | |
| Defendant. | : | |

## INFORMATION

The United States Attorney for the District of Delaware charges that:

## COUNT 1
### (Conspiracy to Commit Wire Fraud)

### Introduction

At all times material to this Information:

1.  Escheat was a process through which a state, as sovereign, took custody of, or assumed title to, unclaimed property. Examples of unclaimed property included lost or forgotten uncashed checks, stocks, bonds, dividends, bond interest, insurance proceeds, utility refunds, and safe deposit box contents.

2.  The Bureau of Unclaimed Property ("Bureau") was a subdivision of the Division of Revenue of the Delaware Department of Finance. The Bureau received unclaimed property from "holders" of the property and processed claims filed by owners who sought to take possession of the unclaimed property.

3.  Under Delaware law, companies incorporated in Delaware were required under certain circumstances to file with the Bureau reports detailing their holdings of unclaimed stock

and other securities and to escheat (i.e. deliver) to the Bureau that property.

4.  When filing their reports with the Bureau, companies holding unclaimed stock were expected to comply with the requirements described in the State of Delaware Escheat Handbook. The Handbook required holders to describe the unclaimed property they would escheat with particularity. For example, holder "ABC Co." was expected to report to the Bureau that it was escheating 100 shares of its common stock worth $100, and that the books and records of the company indicated that "John Doe" of "123 Main Street, Anywhere USA" owned that property. This reporting was required to assist the Bureau in determining whether a claim filed by a purported owner of the property (for example, John Doe's heir) was legitimate.

5.  Despite this expectation, companies with unclaimed stock often described stock escheated to the Bureau as "owner unknown" because the companies did not have records that established the identity of the owner of the stock.

6.  Unclaimed property was delivered to Delaware either electronically or by check made payable to the Delaware State Escheator. The escheated property was deposited into Delaware's General Fund.

7.  There was no time limit on when a owner of unclaimed property could come forward to make a claim. In fact, most property escheated to the Bureau was never claimed.

8.  ANTHONY J. LOFINK was employed by the Bureau. ANTHONY J. LOFINK 's responsibilities included the processing of ownership claims to unclaimed property filed with the Bureau.

9.  ANTHONY J. LOFINK had authority to approve small dollar claims. For larger claims,

2

ANTHONY J. LOFINK was required to obtain approval from one or more supervisors.

10.     Once a claim was approved, the Bureau prepared a payment voucher and sent it to the

Delaware Office of the State Treasurer ("OST").  OST was responsible for issuing checks

to owners who had established their right to unclaimed property.  After issuing the

checks, OST delivered the checks to the Bureau for disbursement.  ANTHONY J.

LOFINK was the person at the Bureau responsible for disbursement of checks on

approved claims.

11.     Company Z was a Delaware corporation created in or around January 1990 as a result of

the merger of Company X and Company Y.  Once it was created, Company Z attempted

to contact all stockholders to advise them of the merger and the company's offer to

exchange existing stock of the merged companies for the stock in the new entity.  Despite

several years of effort, Company Z was unable to locate the record owners of millions of

dollars worth of stock and dividends.  This property was escheated to Delaware in due

course in or around 1997 and 1998.  Much of that property was escheated as "owner

unknown."

12.     Following the escheatment of the Company Z's unclaimed property to Delaware,

individuals continued to contact Company Z, claiming that they owned Company X

and/or Company Y stock prior to the merger.

13.     In response to such a claim, Company Z researched its records to determine if the

claimant was entitled to property that had been escheated to Delaware.  If Company Z

determined its records showed that the claimant was entitled to escheated property, it sent

the claimant a letter describing how much of the claimant's property was escheated to

3

Delaware according to company records ("the Company Z Verification Letter").

Company Z also sent a copy of the Company Z Verification Letter, often by email, to the

Bureau. The Bureau treated the Company Z Verification Letter as adequate proof of

stock ownership.

14. Company A was a company that escheated unclaimed property to Delaware.

15. Company B was a company that escheated unclaimed property to Delaware.

16. Banks were required by federal law to file a Currency Transaction Report on all cash

transactions exceeding $10,000. Persons engaged in criminal behavior often

circumvented this rule in an effort to remain anonymous by "structuring" the deposit or

withdrawal of more than $10,000 into multiple transactions. each less than $10,000.

## Charging Paragraph

17. Beginning in or around May 2005, and continuing until in or around October 2007, in the

District of Delaware and elsewhere, ANTHONY J. LOFINK, defendant herein, and

persons known and unknown to the United States Attorney, including S.R., J.D., C.S. and

M.S., did knowingly combine, conspire, confederate and agree together and with each

other to commit an offense against the United States, to wit, to violate 18 U.S.C. § 1343,

in that they knowingly, having devised and intending to devise a scheme and artifice to

defraud, and for obtaining money and property by means of false and fraudulent

pretenses, representations and promises, would and did transmit, and cause to be

transmitted by means of wire, radio, and television communication in interstate and

foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of

executing such scheme and artifice, to wit, a facsimile sent on or about March 30, 2007,

4

by C.S. in or around Englishtown, New Jersey to the defendant at the Bureau of

Unclaimed Property of the State of Delaware in Wilmington, Delaware.

## The Scheme and Artifice to Defraud Delaware and Certain Owners of Unclaimed Property

It was part of the scheme and artifice to defraud that:

18.    ANTHONY J. LOFINK would and did process false and fraudulent claims for over $1.2

million in unclaimed property that had been escheated to, and was in the custody of, the

State of Delaware for his own benefit and for the benefit of M.S., J.D., S.R., and C.S., as

more fully set forth in paragraphs 23 to 25 below.

19.    ANTHONY J. LOFINK would and did, access a computer database using a supervisor's

password and falsely record supervisory approval of a false and fraudulent claim for

escheated property.

20.    J.D., S.R., and C.S. would and did participate in the processing of false claims by

ANTHONY J. LOFINK by submitting signed and notarized claims for unclaimed

property in which they had no interest, and to which they had no right, and by submitting

legitimate identity documents to support the false and fraudulent claims, as more fully set

forth in paragraphs 26 to 30 below.

21.    ANTHONY J. LOFINK would and did take checks obtained by fraud and process such

checks to M.S., J.D., S.R., and C.S. in the same or similar manner as he would handle

payment on legitimate claims, as more fully set forth in paragraphs 31 to 33 below.

22.    M.S., J.D., S.R., and C.S. would and did accept delivery of checks obtained by fraud and

deposit such checks in various bank accounts, from which accounts they would and did

withdraw and deliver ANTHONY J. LOFINK's share of the proceeds of the fraud, in a

5

manner designed to conceal their own participation and the participation of ANTHONY

J. LOFINK in the conspiracy, as more fully set forth in paragraphs 31 to 33 below.

## Processing of False and Fraudulent Claims

23.    From May 2005 to October 2007, ANTHONY J. LOFINK processed a series of false and

fraudulent claims for abandoned property in the names of M.S., J.D., S.R., and C.S.,

knowing that they were not legitimate claimants, in order to obtain the claimed property

by fraud from both Delaware and the true owner of the claimed property, in the amounts

described, and on or about the dates set forth in the table below:

| Date | Claim | Amount |
|------|-------|--------|
| May 12, 2005 | M.S. Claim | $24,014.07 |
| November 1, 2005 | First J.D. Claim | $30,033.64 |
| June 9, 2006 | First S.R. Claim | $42,101.00 |
| July 25, 2006 | Second S.R. Claim | $72,126.81 |
| September 27, 2006 | Third S.R. Claim | $182,151.23 |
| February 21, 2007 | Fourth S.R. Claim | $282,163.20 |
| March 28, 2007 | First C.S. Claim | $195,282.12 |
| June 4, 2007 | Second C.S. Claim | $222,124.23 |
| July 25, 2007 | Second J.D. Claim | $195,251.23 |

24.    Knowing that each of the claims identified in paragraph 23 above was false and

fraudulent, ANTHONY J. LOFINK would and did prepare the claim for supervisory

review and approval, prepare, or cause to be prepared, a payment voucher for the claim,

and submit, or cause to be submitted, a payment voucher to OST.

25.    On or about October 9, 2007, ANTHONY J. LOFINK initiated, but did not complete,

6

processing a false and fraudulent claim in the name of S.R. (the "Fifth S.R. Claim")
indicating that S.R. was entitled to $351,370.59 in unclaimed property escheated to
Delaware by Company A.

## Provision of Documents Supporting the Claims

26.    ANTHONY J. LOFINK knew that in the normal course Company Z would send
        Delaware a copy of the Company Z Verification Letter.

27.    ANTHONY J. LOFINK knew that the Bureau would consider the Company Z
        Verification Letter as sufficient proof of a stockholder's ownership of property escheated
        by Company Z in cases where the property had originally been delivered to Delaware by
        Company Z as "owner unknown."

28.    Except for the M.S. Claim, for each of the false and fraudulent claims described in
        paragraph 23 above, ANTHONY J. LOFINK created a forged, false, and fraudulent
        document purporting to be a Company Z Verification Letter stating that the putative
        claimant had owned the common stock of Company Y prior to the merger that created
        Company Z.

29.    ANTHONY J. LOFINK knew that the Bureau required claimants to submit documents to
        establish the identity of the claimant as part of the claim approval process.

30.    Except for the M.S. Claim, each of the false and fraudulent claims described in paragraph
        23 above was processed with legitimate identification documents of the co-conspirator
        claimant, including driver's licences, social security cards, bank statements and tax
        returns.

**Disbursement, Division and Concealment of the Proceeds of the Fraud**

31.     In the case of each fraudulently-obtained check, the check was issued in the name of the
co-conspirator in whose name the claim was processed, and delivered by ANTHONY J.
LOFINK, directly or indirectly, to the claimant co-conspirator.

32.     In each case, the claimant co-conspirator would and did deposit the fraudulently-obtained
check in a bank account belonging to, or affiliated with, the co-conspirator.

33.     With respect to each fraudulently-obtained check, ANTHONY J. LOFINK expected to
receive, and did receive, about one third to one half of the proceeds, depending on the
number of other claimant co-conspirators directly participating in the transaction.  Much
of the time, ANTHONY J. LOFINK's share of the fraudulently-obtained property was
delivered to him in a manner that was difficult to trace, typically by either making
structured cash withdrawals from a claimant co-conspirator's bank account, and
delivering that cash to ANTHONY J. LOFINK for deposit into his account, or by
purchasing goods and services on his behalf.

**Overt Acts**

34.     In furtherance of the charged conspiracy and to effect the illegal object thereof,
ANTHONY J. LOFINK, and others known to the United States Attorney did commit and
perform in the District of Delaware and elsewhere the following overt acts:

    a.     In or around May, 2005, ANTHONY J. LOFINK processed the M.S. Claim
indicating that M.S. was entitled to $24,014.07 in property escheated to Delaware
by Company B.

    b.     On or about May 17, 2005, M.S. deposited into his Citizens Bank account a check

8

for $14,203.81 and a check for $9,810.26, each check being drawn on the State of

Delaware Vendor Payment Account.

c.      On or about the dates listed below, M.S. made the cash withdrawals and

ANTHONY J. LOFINK made the cash deposits listed below:

| M.S. Citizens Bank Transaction | | | LOFINK Artisans Bank Transaction | | |
|---|---|---|---|---|---|
| Overt Act | Date | Transaction | Overt Act | Date | Transaction |
| c-1 | 5/19/05 | $6,000.00 Check to M.S. | c-2 | 5/20/05 | $5,800 .00 Cash Deposit |
| c-3 | 5/25/05 | $3,000.00 Check to M.S. | c-4 | 5/26/05 | $3,000.00 Cash Deposit |

d.      In or around October 2005, ANTHONY J. LOFINK processed the First J.D.

Claim indicating that J.D., as beneficiary of "M.D.," was entitled to $30,033.64 in

unclaimed property escheated to Delaware by Company Z.

e.      On or about November 3, 2005, J.D. deposited a check for $30,033.64 drawn on

the State of Delaware Vendor Payment Account into a Commerce Bank account.

f.      On or about November 4, 2005, ANTHONY J. LOFINK deposited a check for

$15,000 drawn on J.D.s' Commerce Bank account into ANTHONY J. LOFINK's

Artisans Bank account.

g.      On or about June 9, 2006, ANTHONY J. LOFINK processed the First S.R. Claim

indicating that S.R. was entitled to $42,101.00 in unclaimed property escheated to

Delaware by Company Z.

h.      On or about June 19, 2006, S.R. deposited a check for $42,101.00 drawn on the

State of Delaware Vendor Payment Account into a Commerce Bank account.

i.      On or about the dates listed below, S.R. wrote the following checks to cash:

9

| Withdrawals from S.R.'s Personal Commerce Bank Checking Account, June-July '06 | | | |
|---|---|---|---|
| Overt Act | Date Presented | Amount | Memo |
| I-1 | 6/23/06 | $2,000.00 | "Draw T[ony]LOF[ink]" |
| I-2 | 6/29/06 | $2,000.00 | "T[ony]L[ofink]" |
| I-3 | 7/3/06 | $2,000.00 | "T[ony]L[ofink]" |
| I-4 | 7/17/06 | $1,000.00 | "T[ony]L[ofink]" |
| I-5 | 7/31/06 | $4,000.00 | "T[ony]L[ofink] cash" |

     j.      On or about July 25, 2006, ANTHONY J. LOFINK processed the Second S.R.

Claim indicating that S.R. was entitled to $72,126.81 in unclaimed property

escheated to Delaware by Company Z.

     k.      On or about August 11, 2006, S.R. deposited a check for $72,126.81 drawn on the

State of Delaware Vendor Payment Account into a PNC Bank account.

     l.      On or about the dates listed below, S.R. and ANTHONY J. LOFINK engaged in

the financial transactions listed below:

| S.R. Transaction | | | LOFINK Transaction | | |
|---|---|---|---|---|---|
| Overt Act | Date | Transaction | Overt Act | Date | Transaction |
| I-1 | 8/14/06 | $5,000.00 Check to S.R. | I-2 | 8/15/06 | $4,000.00 Cash Deposit |
| I-3 | 8/21/06 | $5,000.00 Cash Withdrawal | I-4 | 8/21/06 | $4,000.00 Cash Deposit |
| I-5 | 8/28/06 | $9,000.00 Cash Withdrawal | I-6 | 9/7/06 | $8,900.00 Cash Down Payment on Lease for BMW 330I |

     m.     On or about September 27, 2006, ANTHONY J. LOFINK processed the Third

S.R. Claim indicating that S.R. was entitled to $182,151.23 in unclaimed property

escheated to Delaware by Company Z.

     n.     On or about October 11, 2006, S.R. deposited a check for $182,151.23 drawn on

the State of Delaware Vendor Payment Account into a PNC Bank account.

o.   On or about December 27, 2006, S.R. wrote a check to a furniture retailer for "TL Bedroom Set," in the amount of $4,212.

p.   On or about February 21, 2007, ANTHONY J. LOFINK processed the Fourth S.R. Claim indicating that S.R., as beneficiary of "N.R." was entitled to $282,163.20 in unclaimed property escheated to Delaware by Company Z.

q.   On or about March 1, 2007, S.R. deposited a check for $282,163.20 drawn on the State of Delaware Vendor Payment Account into a PNC Bank account.

r.   On or about March 30, 2007, C.S. faxed a claim form to the Bureau.

s.   On or about March 30, 2007, ANTHONY J. LOFINK processed the First C.S. Claim indicating that C.S. was entitled to $195,282.12 in unclaimed property escheated to Delaware by Company Z.

t.   On or about April 13, 2007, C.S. deposited a check for $195,282.12 drawn on the State of Delaware Vendor Payment Account into a Wachovia Bank account.

u.   On or about April 17, 2007, C.S. wired $65,000 from a Wachovia Bank account to a Commerce Bank account belonging to S.R.

v.   On or about April 17, 2007, C.S. wired $65,000 from a Wachovia Bank account to a PNC Bank account belonging to S.R.

w.   On or about the dates listed below, S.R. and ANTHONY J. LOFINK engaged in the financial transactions listed below:

11

| S.R. Withdrawal | | | | LOFINK Deposit | | | |
|---|---|---|---|---|---|---|---|
| Overt Act | Date | Amount | Bank (Branch) | Overt Act | Date | Amount | Bank |
| w-1 | 4/18/07 | $8,000 | Commerce (Kirkwood/Limestone) | --- | --- | --- | --- |
| w-2 | 4/19/07 | $8,000 | Commerce (Governor's Square) | --- | --- | --- | --- |
| w-3 | 4/23/07 | $8,000 | Commerce (Governor's Square) | --- | --- | --- | --- |
| w-4 | 4/24/07 | $8,000 | Commerce (Kirkwood/Limestone) | w-5 | 4/24/07 | $2,000 | Artisans |
| w-6 | 4/30/07 | $8,000 | Commerce (Rt 273) | --- | --- | --- | --- |
| --- | --- | --- | --- | w-7 | 5/7/07 | $25,000 | Artisans |
| w-8 | 5/10/07 | $8,000 | PNC | --- | --- | --- | --- |
| --- | --- | --- | --- | w-9 | 5/14/07 | $7,600 | Artisans |
| w-10 | 5/17/07 | $9,000 | PNC | --- | --- | --- | --- |
| w-11 | 5/22/07 | $8,000 | Commerce (Kirkwood/Limestone) | w-12 | 5/22/07 | $7,700 | Artisans |
| --- | --- | --- | --- | w-13 | 5/31/07 | $6,950 | Artisans |
| w-14 | 6/5/07 | $8,000 | PNC | --- | --- | --- | --- |
| --- | --- | --- | --- | w-15 | 6/12/07 | $6,100 | Artisans |
| w-16 | 6/14/07 | $8,000 | PNC | --- | --- | --- | --- |
| w-17 | 6/19/07 | $8,000 | PNC | --- | --- | --- | --- |
| w-18 | 6/21/07 | $8,000 | PNC | --- | --- | --- | --- |
| --- | --- | --- | --- | w-19 | 6/22/07 | $7,000 | Artisans |
| --- | --- | --- | --- | w-20 | 6/26/07 | $8,000 | Artisans |
| --- | --- | --- | --- | w-21 | 6/28/07 | $5,500 | Artisans |
| --- | Total | $97,000 | --- | --- | Total | $75,850 | --- |

x.    On or about June 4, 2007, ANTHONY J. LOFINK processed the Second C.S.

Claim indicating that C.S., as the beneficiary of "R.S.," was entitled to

$222,124.23 in unclaimed property escheated to Delaware by Company Z.

y.    On or about June 26, 2007, C.S. deposited a check for $222,124.23 drawn on the

State of Delaware Vendor Payment Account into a Wachovia Bank account.

z.    On or about July 5, 2007, C.S. wired $61,001 from a Wachovia Bank account to a

Commerce Bank account belonging to S.R.

aa.     On or about July 5, 2007, C.S. wired $61,001 from a Wachovia Bank account to a PNC Bank account belonging to S.R.

bb.     On or about July 25, 2007, ANTHONY J. LOFINK processed the Second J.D. Claim indicating that J.D. was entitled to $195,251.23 in unclaimed property escheated to Delaware by Company Z.

cc.     On or about August 20, 2007, J.D. deposited a check for $195,251.23 drawn on the State of Delaware Vendor Payment Account into a Commerce Bank account.

dd.     On or about August 28, 2007, J.D. transferred $65,000.00 to a Commerce Bank account belonging to S.R.

ee.     On or about August 29, 2007, J.D. wired $67,000 to a PNC Bank account belonging to S.R.

ff.     On or about the dates listed below, S.R. and ANTHONY J. LOFINK engaged in the financial transactions listed below:

| S.R. Withdrawal | | | | LOFINK Deposit | | | |
|---|---|---|---|---|---|---|---|
| Overt Act | Date | Amount | Bank | Overt Act | Date | Amount | Bank |
| ff-1 | 8/29/07 | $8,000 | PNC | --- | --- | --- | --- |
| ff-2 | 8/30/07 | $8,000 | PNC | | | | |
| ff-3 | 8/31/07 | $8,000 | PNC | ff-4 | 8/31/07 | $7,000 | Artisans |
| --- | --- | --- | --- | ff-5 | 9/3/07 | $8,000 | Artisans |
| ff-6 | 9/7/07 | $8,500 | PNC | --- | --- | --- | --- |
| --- | --- | --- | --- | ff-7 | 9/11/07 | $8,000 | Artisans |
| ff-8 | 9/12/07 | $8,000 | PNC | --- | --- | --- | --- |
| --- | --- | --- | --- | ff-9 | 9/18/07 | $7,900 | Artisans |
| ff-10 | 9/20/07 | $8,000 | PNC | --- | --- | --- | --- |
| --- | --- | --- | --- | ff-11 | 9/21/07 | $5,000 | Artisans |
| ff-12 | 10/4/07 | $8,000 | Commerce | --- | --- | --- | --- |

| S.R. Withdrawal | | | | LOFINK Deposit | | | |
|---|---|---|---|---|---|---|---|
| Overt Act | Date | Amount | Bank | Overt Act | Date | Amount | Bank |
| --- | --- | --- | --- | ff-13 | 10/5/07 | $7,200 | Artisans |
| ff-14 | 10/8/07 | $8,000 | Commerce | --- | --- | --- | --- |
| --- | --- | --- | --- | ff-15 | 10/9/07 | $8,000 | Artisans |

gg. On or about October 9, 2007, ANTHONY J. LOFINK initiated processing the Fifth S.R. Claim indicating that S.R. was entitled to $351,370.59 in unclaimed property escheated to Delaware by Company A.

All in violation of 18 U.S.C. §§ 1343 and 1349.

## COUNT 2
## (Money Laundering Conspiracy)

35. Paragraphs 1 through 34 are incorporated herein by reference.

## Charging paragraph

36. Beginning in or around June 2006 and continuing until in or around October 2007, in the District of Delaware and elsewhere, ANTHONY J. LOFINK, defendant herein, together and with others known and unknown to the United States Attorney, including S.R., did unlawfully, willfully, and knowingly combine, conspire, confederate and agree among themselves and each other to commit offenses under 18 U.S.C. § 1956, as follows:

(a) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, to conduct and attempt to conduct such a financial transaction, to wit, the withdrawal of United States currency in amounts under $10,000 from S.R.'s account **-****-8776 at Commerce Bank, the activities of which bank affect interstate commerce, and S.R.'s account **-****-5792 at PNC Bank, the activities of which bank affect interstate commerce,

14

knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, to wit, wire fraud and interstate transportation of stolen property, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and (b) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, to conduct and attempt to conduct such a financial transaction, to wit, the withdrawal of United States currency in amounts under $10,000 from S.R.'s account **-****-8776 at Commerce Bank, the activities of which bank affect interstate commerce, and S.R.'s account **-****-5792 at PNC Bank, the activities of which bank affect interstate commerce, to avoid a transaction reporting requirement under federal law, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii).

All in violation of 18 U.S.C. § 1956(h).

## COUNT 3
## (Wire Fraud)

At all times material to this Indictment:

37.   Paragraphs 1 through 36 are incorporated herein by reference.

38.   Planet Beach Franchising Corporation ("Planet Beach") was a Louisiana-based corporation.

39.   Planet Beach marketed franchises for what it described as "contempo spas," a combination of tanning salon and day spa.

40.   Small Business Loan Source, LLC ("SBLS") was a Houston, Texas-based lender for

15

business and commercial real estate ventures.

41. The Small Business Administration ("SBA") was an independent agency of the federal government created to aid, counsel, assist and protect the interests of small business concerns, including through the guarantee of small business loans.

42. SR1 Concepts, LLC was a Delaware Limited Liability Company with S.R. as its sole member.

43. TO1 Concepts, LLC was a Delaware Limited Liability Company with S.R. as 50% owner and managing member and ANTHONY J. LOFINK as 50% owner and non-managing member.

## Charging Paragraph

44. On or about March 22, 2007, in the District of Delaware, and elsewhere, ANTHONY J. LOFINK, defendant herein, having devised and having intended to devise a scheme and artifice to defraud, as more fully set forth in paragraphs 45 and 46 of this Information, incorporated herein by reference, did transmit and cause to be transmitted by means of a wire communication in interstate commerce writings, signs, and signals for the purpose of executing such scheme and artifice, to wit, the wire transfer of $57,159.00 from PNC Bank in Delaware to the Capital One Bank account of Planet Beach in Louisiana, in violation of 18 U.S.C. §§ 1343 and 2.

## The Scheme and Artifice to Defraud SBLS and the SBA

It was part of the scheme and artifice to defraud that:

45. S.R., in an effort to obtain a small business loan from SBLS to open a Planet Beach franchise, would and did submit a personal financial statement to SBLS indicating that

16

the large amount of cash he had available to him came from an inheritance and stock
sales.

46.   ANTHONY J. LOFINK and S.R., in order to lull SBLS into believing that the large
      amount of cash S.R. had on hand came from a legitimate source, would and did create a
      letter signed by ANTHONY J. LOFINK in his official capacity and designed to create the
      false and fraudulent impression that the State of Delaware had honored two legitimate
      claims by S.R. for unclaimed property totaling more than $350,000, which letter was
      provided to SBLS.

### The Investment by S.R. in a Planet Beach Contempo Spa Franchise

47.   Beginning in the spring of 2007, S.R. began negotiations with Planet Beach to open a
      franchise (the "Franchise") in Delaware.

48.   S.R. planned to operate the Franchise in Delaware and offer tanning and spa services, and
      sell related products.

49.   The Franchise business plan developed by S.R. estimated start-up costs to be $250,400.

50.   The Franchise business plan anticipated that the majority of start-up costs would be
      financed by a conventional loan, or an SBA loan.

51.   On or about March 20, 2007, S.R. formed SR1 Concepts, LLC as the entity that would
      operate the Franchise.

52.   On or about March 20, 2007, S.R. formed TO1 Concepts, LLC as the entity that would
      develop S.R.'s rights to act as an area representative for Planet Beach. S.R. and
      ANTHONY J. LOFINK each had a 50% interest in TO1 Concepts, LLC.

53.   The Limited Liability Company Agreement of TO1 Concepts, LLC required ANTHONY

17

J. LOFINK to make a $52,195.00 capital contribution to TO1 Concepts, LLC.

54.   On or about March 22, 2007, S.R. entered into a Single Unit Franchise Agreement (the "Franchise Agreement") with Planet Beach. Among other things, the Franchise Agreement required S.R. to pay a franchise fee of $12,500.

55.   On or about March 22, 2007, S.R. paid $12,500 in franchise fees to Planet Beach via a $7,500 check and the $5,000 wire transfer described further in paragraph 58.

56.   On or about March 22, 2007, S.R. also entered into an Area Representative Agreement with Planet Beach. The Area Representative Agreement granted S.R. development rights for additional Planet Beach franchises within New Castle County, Delaware.

57.   In consideration for these rights, the Area Representative Agreement required S.R. to pay Planet Beach $52,159.00.

58.   On or about March 22, 2007, S.R. wired $57,159.00 from PNC Bank to Planet Beach's bank. This sum included the $5,000 balance owed on the franchise fee. The balance of $52,159.00 satisfied S.R.'s obligations to Planet Beach under the Area Representative Agreement, and was contributed by ANTHONY J. LOFINK in satisfaction of his obligation to make a capital contribution under the TO1 Concepts, LLC Limited Liability Company Agreement.

59.   Beginning in or around May 2007, S.R. contacted SBLS about securing financing for the Franchise.

60.   Because the loan would be guaranteed by SBA, as part of its lending process, SBLS required S.R. to prepare an SBA personal financial statement (SBA Form 413) ("PFS").

61.   The PFS submitted by S.R. falsely and fraudulently indicated that in 2006 he had received

$72,000 from an "inheritance." The PFS also falsely and fraudulently indicated that in

2007 he had received an additional $285,000 from an "inheritance."

62.    An internal SBLS document described the data from the PFS as follows: "[t]he PFS dated

5/31/07 reflects [S.R.]'s assets. His large cash amount is from an inheritance from his

father and also he recently sold his home."

63.    In a May 31, 2007, memorandum sent to SBLS, S.R. stated:

> I have decided to take some time off to pursue an opportunity as planet
> beach area representative for the Delaware market as well as a franchisee
> in Delaware. As my resume shows I have been in the restaurant business
> for many years, I also worked for [a company] as a business sales
> executive from October of 2006 until January of 2007 which I have not
> updated on my current resume. In February of 2007 I liquidated all of my
> stocks, in order to pursue my current goals These stocks totaled over
> 300,000 dollars, this is the reason I have not worked since January of
> 2007. My future source of income will be from operating my planet beach
> franchise and also as the area representative for the Delaware market. [sic]

64.    On June 12, 2007, SBLS conditionally approved SR1 Concepts, LLC for an SBA-

guaranteed loan in the amount of $309,000. As a condition of making the loan, SBLS

required a $173,000 cash injection from S.R., which would be used primarily to purchase

equipment, establish a reserve, and pay for pre-opening expenses.

65.    On June 20, 2007, as a further explanation for the source of S.R.'s available capital,

ANTHONY J. LOFINK prepared and signed a letter on State of Delaware letterhead,

which letter was provided to SBLS, stating:

> Dear Mr. [S.R.]:
>
> Thank you for your recent inquiry in regards to unclaimed property.
>
> The State of Delaware has issued two unclaimed property checks in your
> name. The first was in the amount of $72,126.81 issued on 8/10/2006,

> cheek number 5229835. And the second was in the amount of
> $282,163.20 issued on 3/1/2007, check number 5428781. If you have any
> questions or concerns regarding your claimed property refunds feel free to
> contact me at the number below.

66.   On or about July 25, 2007, SBLS, on behalf of SR1 Concepts, LLC, submitted a loan

      application in the amount of $309,000.00 to the SBA.

67.   SBA standard operating procedure required prospective lenders to verify the source of a

      cash injection where the cash injection exceeded one third of the loan amount. In

      compliance with this procedure, SBLS included with the application package an "SBA

      Loan Report" in which SBLS advised the SBA that, according to S.R., the source of the

      cash injection was an inheritance.

68.   On July 27, 2007, the SBA approved the SBLS loan to SR1 Concepts, LLC.

69.   Beginning August 3, 2007, SBLS began disbursing the loan proceeds to SR1 Concepts,

      LLC. The final disbursement was made on November 1, 2007. The total amount

      disbursed was $309,000.00.

70.   SBLS would not have processed the loan, and the SBA would not have guaranteed the

      loan, if they had known the true source of the funds.

      All in violation of 18 U.S.C. §§ 1343 and 2.

## NOTICE OF FORFEITURE

71.   Paragraphs 1 to 70 are incorporated herein by reference for the purpose of alleging

      forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

72.   Upon conviction of the offense alleged in Count 1 of this Information, ANTHONY J.

      LOFINK, defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. §

20

981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or

is derived from proceeds traceable to the offense. The property to be forfeited includes,

but is not limited to, the following

(A) a sum of money equal to $1,245,247.53 in United States currency,

representing the amount of proceeds obtained as a result of the offense, to wit, a

violation of 18 U.S.C. § 1349;

(B) all right title and interest in the Franchise, as defined above, including the

license to operate the Franchise, and the assets thereof; and

(C) all right title and interest in the license to serve as an area representative for

Planet Beach, as conveyed under the Area Representative Agreement described

above.

73.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without

        difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C.

§ 853(p), as incorporated by 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

COLM F. CONNOLLY
United States Attorney

By: _____

David C. Weiss
Douglas E. McCann
Assistant United States Attorneys

Dated: January 8, 2008